# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AGI CONSULTING L.L.C., by Assaf Al-Assaf as Trustee/Owner/Plan Administrator of an Alleged Non-Integrated Defined Benefit Plan,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN NATIONAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. CIV-18-252-G |

## ORDER

Now before the Court is the Motion for a New Trial filed by Plaintiff AGI Consulting L.L.C., by Assaf Al-Assaf as Trustee/Owner/Plan Administrator of an Alleged Non-Integrated Defined Benefit Plan, pursuant to Federal Rules of Civil Procedure 59(a)(1)(B) and 59(a)(2). *See* Pl.'s Mot. (Doc. No. 18). Defendant American National Insurance Company has responded in opposition (Doc. No. 19), and Plaintiff has replied (Doc. No. 20).

### BACKGROUND

On July 30, 2018, the Court granted Defendant's Motion to Dismiss after Plaintiff confessed that its cause of action for fraud against Defendant was time-barred. *See* Order of July 30, 2018 (Doc. No. 16) (West, J.). The Court further denied Plaintiff's request, set forth in its response to Defendant's Motion to Dismiss, to amend its complaint, after finding that amendment would be futile because Plaintiff's proposed claims for rescission,

reformation, and breach of contract would likewise be untimely under Okla. Stat. tit. 12, § 95. *See id*. at 12.

Plaintiff has now moved the Court to vacate its Order and Judgment (Doc. Nos. 16, 17) entered on July 30, 2018, and permit Plaintiff to file an amended complaint alleging claims for breach of fiduciary duty against Defendant under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, as amended ("ERISA"). *See* Pl.'s Reply ¶ 23 (Plaintiff's "sole purpose [in filing the Motion for a New Trial is] to amend its Complaint to [set forth] an ERISA cause of action for breach of a fiduciary duty").[1]

## STANDARD OF REVIEW

In support of its motion, Plaintiff has relied on Federal Rules of Civil Procedure 59(a)(1)(B) and (a)(2). These rules provide, respectively, that the Court "may . . . grant a new trial . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" and "may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(1)(B), (a)(2).

---

[1] Plaintiff has cited Federal Rule of Civil Procedure 15 and its mandate that leave to amend "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In light of the Court's disposition of Plaintiff's motion, the Court has not considered whether amendment is allowed under Federal Rule of Civil Procedure 15(c), which permits "[a]n amendment to a pleading [to] relate[ ] back to the date of the original pleading . . . ." Fed. R. Civ. P. 15(c)(1).

There has been no trial, nonjury or otherwise, in this matter, however. Neither Rule 59(a)(1)(B) nor Rule 59(a)(2), therefore, applies as a method for challenging the Court's Order and Judgment. *See Soto v. Bd. of Cty. Comm'rs of Caddo Cty.*, No. CIV-16-416-F, 2017 WL 6551295, at *1 (W.D. Okla. Oct. 4, 2017).

The instant motion is more properly characterized as a motion to alter or amend the Court's Order and Judgment under Federal Rule of Civil Procedure 59(e), which permits relief in certain "limited circumstances." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). *See Soto,* 2017 WL 6551295, at *1 (Fed. R. Civ. P. 59(e) is "appropriate vehicle to review the court's order and judgment" after court has granted a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Those circumstances include

> "(1) an intervening change in the controlling law, (2) [when] new evidence previously [was] unavailable, and (3) the need to correct clear error or prevent manifest injustice."

*Hayes Family Tr.*, 845 F.3d at 1004 (alterations in original) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). *See Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012) (quoting *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) ("'purpose of [Fed. R. Civ. P. 59(e)] motion is to correct manifest errors of law'")). While a Rule 59(e) motion "is not appropriate to revisit issues already addressed or [to] advance arguments that could have been raised in prior briefing," relief under this rule may be available if a "court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012 (citation omitted).

Plaintiff has stated, "[b]y way of explanation and not as an excuse," that "when Plaintiff [first] sought to amend its [c]omplaint, Plaintiff was not clear about the fact that

3

[r]escission, [r]eformation, and [b]reach of [c]ontract all presuppose the existence of a contract and therefore ERISA would apply." Pl.'s Mot. ¶ 9. Plaintiff has argued that the Court nevertheless should have understood that Plaintiff was seeking relief under ERISA in its proposed amended complaint and not under state law for rescission, reformation, and breach of contract (as Plaintiff had argued), and more particularly should have recognized that, because Defendant was a fiduciary, it was charged with the duties imposed by 29 U.S.C. § 1104(a) and that Plaintiff was seeking relief under 29 U.S.C. § 1109 for breach of fiduciary duty.[2]

Plaintiff has contended that if the Court had done so, it would have applied 29 U.S.C. § 1113, the statute applicable "to actions brought to redress a fiduciary's breach of its obligations to enforce the provisions of ERISA," *Trs. of Wyo. Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co.*, 850 F.2d 613, 618 n.8 (10th Cir. 1988) (citation omitted), as opposed to Okla. Stat. tit. 12, § 95, and Plaintiff's proposed claims would have been deemed timely. *See* Pl.'s Mot. ¶¶ 6, 8-9, 13.

Plaintiff has conceded, however, that it did not "raise[] the application of ERISA" in response to Defendant's argument that amendment would be futile, (b) acknowledge in its submissions that it was seeking relief under ERISA, or (c) cite § 1113. *Id.* ¶ 8. Plaintiff has argued that despite "this lack of clarity" in its pleadings and papers, the Court should

---

[2] *See* 29 U.S.C. § 1109(a) (providing that a "fiduciary . . . who breaches any of the responsibilities, obligations, or duties imposed upon" it by 29 U.S.C. § 1104(a) "shall be personally liable to make good . . . any losses to the plan resulting from each such breach, and . . . shall be subject to such . . . equitable or remedial relief as the court may deem appropriate").

4

now vacate its Order and Judgment and permit Plaintiff to file an amended complaint, this time "clearly stat[ing] an ERISA [claim and] statute of limitations . . . ." *Id*. ¶¶ 9, 32.

Because the Court's and the parties' reliance on a state statute of limitations (and failure to address whether ERISA had pre-empted Defendant's proposed state law claims[3]) may be deemed a manifest error of law or a misapprehension of the controlling law that warrants revisitation, the Court reconsiders the matter to determine whether amendment as proposed by Plaintiff would be futile.[4]

29 U.S.C. § 1113

Section 1113 provides that "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation,"

> after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

---

[3] In what is known as conflict preemption, ERISA provides that in certain circumstances it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [29 U.S.C. §] 1003(a) . . . and not exempt under [29 U.S.C. §] 1003(b) . . . ." 29 U.S.C. § 1144(a). The Tenth Circuit has identified four categories of state law "causes of action that 'relate to' a benefit plan for purposes of ERISA preemption," one of which pertains to "laws and common-law rules providing remedies for misconduct growing out of the administration of such plans." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir. 1999) (citation omitted). Plaintiff has now contended that Defendant breached certain fiduciary duties and that Defendant's alleged "misconduct grow[s] out of [its] . . . administration of [an ERISA] . . . plan." *Id*. Therefore, Plaintiff's state law claims seeking relief for reformation, rescission, and breach of contract would be preempted.

[4] In doing so, the Court may consider not only the proposed complaint itself, but also exhibits attached thereto and documents incorporated by reference therein.

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation,

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

By its express terms, then, § 1113 creates two periods for filing suit for breach of the duties imposed on ERISA fiduciaries by 29 U.S.C. § 1104(a): three years and six years. If plaintiff knew of defendant's nonfraudulent breach, § 1113(2)'s three-year limitations period applies, measured from "the earliest date on which the plaintiff had actual knowledge of the breach or violation." *Id*. § 1113(2).

The Tenth Circuit has characterized § 1113(1)'s six-year period as a "statute of repose." *Fulghum v. Embarq Corp.*, 785 F.3d 395, 413 (10th Cir. 2015) (citations omitted). "[S]tatutes of repose operate to 'extinguish a plaintiff's cause of action whether or not the plaintiff should have discovered within that period that there was a violation or an injury.'" *Id*. (quoting *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1224 (10th Cir. 2014)). Under § 1113(1), a plaintiff has six years to file its lawsuit, with this six-year period beginning to run either on the date defendant last acted, if defendant's breach involves an affirmative act, *see* 29 U.S.C. § 1113(1)(A), or on "the latest date on which [defendant] . . . could have cured the . . . violation," *id*. § 1113(1)(B), if defendant's breach is the result of an omission.

In addition to the six-year statute of repose, "§ 1113 contains language providing that 'in the case of fraud or concealment,' a civil enforcement action 'may be commenced

6

not later than six years after the date of discovery of [the] breach or violation.'" *Fulghum*, 785 F.3d at 413 (quoting 29 U.S.C. § 1113). The Tenth Circuit views "the 'fraud or concealment' provision" not as "a separate statute of limitations," but rather as "a legislatively created exception to the six-year statute of repose." *Id*. at 414 (citation omitted). The circuit reads "[t]he fraud or concealment exception . . . in the disjunctive[,]" *id*. at 415, and "'[c]anons of construction indicate that terms connected in the disjunctive . . . be given separate meanings.'" *Id*. (quotation and further citations omitted). "[T]he exception to the general six-year statute," therefore

> applies when the alleged breach of fiduciary duty involves a claim the defendant made "a false representation of a matter of fact, whether by words or conduct, by false or misleading allegations or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury" or when the defendant conceals the alleged breach of fiduciary duty.

*Id*. (quotation and footnote omitted).

## DISCUSSION

Defendant has argued that whether the Court applies § 1113's three-year limitations period, the six-year statute of repose, or § 1113's six-year "fraud or concealment" provision, Plaintiff's proposed breach of fiduciary claims are time-barred and amendment as Plaintiff has now suggested would be futile. The Court agrees.

Plaintiff's original complaint was filed on March 21, 2018. *See* Compl. (Doc. No. 1). In that pleading, Plaintiff alleged that in June 2011 it negotiated and entered into a contract with Defendant to purchase a Defined Benefit Plan ("DBP" or "Plan"), *see id*. ¶ 2, that was to be administered according to the handwritten terms on a form titled

7

"Adoption Agreement for American National Insurance Company Standardized Non-Integrated Defined Benefit Prototype Plan" ("Adoption Agreement"). *See id*. Ex. 1 (Doc. No. 1-2). Plaintiff contended that Defendant, without Plaintiff's knowledge, replaced that form with a typewritten form prepared by Defendant and, in doing so, changed certain material terms in the Plan. *See id.* Ex. 3 (Doc. No. 1-4).

In the proposed amended pleading which Plaintiff had attached to its response to Defendant's Motion to Dismiss, *see* Pl.'s Resp. Ex. 2 (Doc. No. 12-3), and which Plaintiff has now contended should have been evaluated under § 1113 (and not Okla. Stat. tit. 12, § 95), Plaintiff has alleged:

(1) prior to the date Plaintiff executed the Adoption Agreement to purchase the DBP, Robyn Assaf on behalf of Plaintiff had numerous telephone conversations with Andre Fleener, Defendant's sales agent, concerning the DBP, *see* Pl.'s Resp. Ex. 2 ¶ 9;

(2) on the date the Adoption Agreement was executed, June 22, 2011, Assaf and Fleener together with Defendant representative Greg Valley "discussed [the form] line by line," *id*. ¶ 10;

(3) the Adoption Agreement "modifie[d] . . . [Defendant's] Prototype Plan to [Plaintiff's] . . . specification[s]," *id*. ¶ 8, and once the Adoption Agreement had been executed, Defendant was to administer the DBP according to the Adoption Agreement's terms;

(4) "the preprinted [Adoption Agreement] form . . . had been partially filled out by [Defendant] . . . in typewritten form and then was partially filled out by handwritten entries either by . . . Assaf, or by . . . Valley to complete the agreement," *id*. ¶ 10, although "[s]ome items on the form . . . remained blank," *id*.;

(5) "[i]n addition to the Adoption Agreement[,] . . . Valley prepared a 'New Plan Installation Transmittal' . . . to send . . . to . . . Defendant," *id*. ¶ 12; *see* Compl. Ex. 2 (Doc. No. 1-3);

(6) "to implement the Plan, a list or 'census' of all eligible employees[ ] . . . [had to] be furnished to . . . [Defendant] . . . to calculate . . . the [Plan's] funding requirements," Pl.'s Resp. Ex. 2 (Doc. No. 12-3) ¶ 16; *e.g.*, *id*. ¶ 22 ("The census

affects the amount of funding necessary to operate the DBP[.] The more employees who qualify for participation, the greater the funding.");

(7) Defendant first requested the 2011 census on December 29, 2011, and Plaintiff furnished the same on February 8, 2012, *see id.* ¶ 18; censuses were thereafter provided for years 2012 and 2013, *see id.*;

(8) "[f]rom the very beginning of the contract term the parties disagreed on [which employees were] . . . to be included in the census," *id.* ¶ 19, "as well as [on] other substantial matters," *id.* ¶ 20;

(9) on August 27, 2013, Defendant notified Plaintiff "of a substantial increase in the funding requirements," *id.* ¶ 23, and after Plaintiff "complain[ed] about the dramatic increase," *id.*, "the DBP was [f]rozen [on September 12, 2013]," *id.* ¶ 24, at Fleener's instruction, *id.* ¶ 23; and

(10) the Plan started on January 1, 2011, *id.* ¶ 21, and from that time until September 12, 2013, "Defendant was managing a DBP that was materially different than the Adoption Agreement . . . Plaintiff had executed on June 22, 2011." *Id.* ¶ 20.

Plaintiff has alleged in its proposed pleading that on August 10, 2016, three years after "the DBP was [f]rozen," *id.* ¶ 24, Plaintiff "discovered the existence of the two different . . . [P]lans," *id.* ¶ 25, learned that "[t]he DBP that Defendant operated was materially different than the DBP Plaintiff had purchased," *id.* ¶ 26, and further learned that "[t]he signature page from . . . Plaintiff's [handwritten] Adoption Agreement [had been] . . . attached to . . . Defendant's [typewritten] Adoption Agreement." *Id.* ¶ 27. *But see* Pl.'s Resp. (Doc. No. 12) ¶ 9 ("Plaintiff believed the first date of discovery of the switched signature pages was March 24, 2016").

Papers filed in this matter revealed, however, that Plaintiff had in its possession as early as March 14, 2012, a copy of the typewritten Adoption Agreement that contained the materially different terms. *See id.* at 3, n.1.[5] As Plaintiff has conceded, that copy "would

---

[5] Plaintiff advised the Court and Defendant that "[o]n June 12, 2018, while looking for a lease form for a new tenant, on an old staff computer that had been archived for four (4)

9

have put Plaintiff on notice of the two different plans, which in turn would have started the statute of limitations running at a date much earlier than Plaintiff[ ] . . . reasonably believed." *Id.* ¶ 9.

The Court finds, upon review of Plaintiff's proposed pleading and other documents properly considered, that Plaintiff had notice by March 14, 2012, that: (1) Defendant had "not provide[d] the same Adoption Agreement . . . Plaintiff [had] purchased," *id.* Ex. 3 (Doc. No. 12-3) ¶ 31; (2) the DBP that Defendant was managing required only six months of employment to be eligible as a Plan participant, as opposed to one year of employment as stated in the handwritten Adoption Agreement, *compare* Compl. Ex. 3 (Doc. No. 1-4) at 4, *with id.* Ex. 1 (Doc. No. 1-2) at 4;[6] (3) the DBP indicated for purposes of calculating accrued benefits "200%" of an employee's average compensation, while the handwritten form had no percentage assigned, *compare id.* Ex. 3 (Doc. No. 1-4) at 8, *with id.* Ex. 1

---

years, [Plaintiff] . . . found a computer file labeled 'Pension' containing a downloaded copy of the typewritten plan from March 14, 2012. [Plaintiff was] . . . surprised to find the electronic document as the past employee did not make [Plaintiff] . . . aware of the downloaded material or print out a copy of the documents and forward them to . . . [Plaintiff]." Pl.'s Resp. (Doc. No. 12) at 3, n.1. The Court finds, under these circumstances and absent any contrary authority cited by Plaintiff, that the employee's knowledge of the typewritten Adoption Agreement is imputed to Plaintiff and Plaintiff is charged with the knowledge of its employee. *See W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1276 (10th Cir. 2005) (as a "general principle" "an employee's knowledge gained in the course and scope of the employment is imputed to the corporation, and, therefore, to all of its departments").

[6] Although Plaintiff has claimed that it intended that employees would be eligible to participate after one year of service, the New Plan Installation Transmittal which was prepared by Valley and signed by Robyn Assaf on behalf of Plaintiff and which was attached to Plaintiff's complaint, indicates the contrary: that Plaintiff intended employees would be eligible after six months of service. *See* Compl. Ex. 3 (Doc. No. 1-3) at 3, ¶ 1.

(Doc. No. 1-2) at 8; and (4) the DBP stated that participation and average compensation would be measured from January 1, 2010, in contrast to Plaintiff's form that stated that participation and average compensation would be measured from January 1, 2011, *compare id*. Ex. 3 (Doc. No. 1-4) at 7, *with id*. Ex. 1 (Doc. No. 1-2) at 7.

Plaintiff has alleged in its proposed pleading that Defendant fraudulently "manag[ed] a DBP that was materially different than the Adoption Agreement . . . Plaintiff had executed on June 22, 2011." Pl.'s Resp. Ex. 3 (Doc. No. 12-3) ¶ 20; *e.g.*, *id*. ¶ 38 (the freezing of the DBP and the increase in funding requirements "are a direct result of . . . Defendant's fraud in using its DBP terms rather than the Adoption Agreement . . . Plaintiff signed on June 22, 2011"). Further, Plaintiff has alleged that Defendant concealed the fact that two plans existed by attaching "[t]he signature page from . . . Plaintiff's Adoption Agreement . . . to . . . Defendant's Adoption Agreement." Pl.'s Resp. Ex. 3 (Doc. No. 12-3) ¶ 27.

Under § 1113's "fraud or concealment" provision, an "action 'may be commenced not later than six years after the date of discovery of [the] breach or violation.'" *Fulghum,* 785 F.3d at 413 (quoting 29 U.S.C. § 1113). It is undisputed that Plaintiff had in its possession as early as March 14, 2012, a copy of the typewritten Adoption Agreement. That copy not only revealed the materially different terms, *see* Pl.'s Resp. (Doc. No. 12) at 3, n.1, but also had attached to it the Plaintiff's signature page. As Plaintiff has acknowledged, the document "would have put Plaintiff on notice of the two different plans." *Id*. ¶ 9.

Plaintiff therefore had six years after the date of discovery of Defendant's alleged fraudulent conduct and its alleged concealment, or until March 14, 2018, to assert causes of action under § 1109 for breach of fiduciary duty. Because Plaintiff did not seek relief until March 21, 2018 (assuming Plaintiff's claims relate back under Fed. R. Civ. P. 15(c)), amendment of Plaintiff's complaint at this stage of the litigation to more clearly articulate its ERISA claims would be futile.

Plaintiff also has alleged in its proposed pleading that Defendant also breached its fiduciary duty by failing to resolve the census issue on September 12, 2013, after Plaintiff complained that date about the increase in funding. Plaintiff has contended that Defendant "made its first request for a 2011 census [on December 29, 2011]," Pl.'s Resp. Ex. 2 (Doc. 12-3) ¶ 18, and that Plaintiff responded to that request on February 8, 2012, *see id*. Plaintiff has argued that "[w]ith each census, [Plaintiff] questioned and challenged incorrect inclusions by Defendant." Pl.'s Mot. ¶ 21. Plaintiff has alleged in its proposed pleading that "from the first year's census and every census thereafter, disagreements on the census . . . arose." Pl.'s Resp. Ex. 2 (Doc. 12-3) ¶ 20. Plaintiff has alleged that Defendant notified Plaintiff on August 27, 2013, "of a substantial increase in funding," *id*. ¶ 23, and the DBP was thereafter frozen on September 12, 2013, *see id*. ¶ 24.

Section 1113(2) provides that "[n]o action may be commenced . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."

29 U.S.C. § 1113(2).[7] The Tenth Circuit has "yet to define the phrase 'actual knowledge,'" *Mid-S. Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016), used in § 1113(2), and has instead looked to "sister circuits" whose definitions "fall[ ] for the most part into two schools of thought: those that require some understanding that the conduct is unlawful under ERISA and those that merely require knowledge of the conduct itself." *Id.*; *see Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 679 (7th Cir. 2014) ("strictest test applies the three-year bar only when the plaintiff knows not only the facts underlying the alleged violation but also that those facts constitute a violation under ERISA"). *Compare Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954-56 (5th Cir. 1995) ("'[actual

---

[7] The Court may take judicial notice of case filings in determining when Plaintiff had knowledge of the facts underlying its causes of action. *See Wei v. Univ. of Wyo. Coll. of Health Sch. Pharmacy*, 2019 WL 117081, at *3 (10th Cir. Jan. 7, 2019) (district court entitled to glean relevant date for limitations calculation by taking judicial notice of its own case files). Here, the Court has reviewed the pleadings and papers filed in *AGI Consulting LLC v. Am. Nat'l Ins. Co.*, Case No. CIV-18-245-W (W.D. Okla.), wherein Plaintiff sought a declaration that no DBP existed between Plaintiff and Defendant. *See id.* Compl. (Doc. No. 1) ¶ 8. Attached to the complaint in that matter is a partial copy of the "AGI Consulting Pension Plan and Trust Summary Plan Description" ("SPD"), *see id.* Compl. Ex. 15 (Doc. No. 1-9), that Plaintiff states was "first provided" by Defendant on September 12, 2013. *See id.* at 1. A complete copy of the SPD is attached to Defendant's Motion to Dismiss, *see* Def.'s Mot. Ex. 1 (Doc. No. 12-1), and the Court has considered the SPD, the authenticity of which has not been challenged, as "part of the Plan." *Eugene S. v. Horizon Blue Cross Blue Shield*, 663 F.3d 1124, 1131 (10th Cir. 2011).

These documents reflect that, as of September 12, 2013, Plaintiff would have had actual knowledge of the terms of the DBP that Defendant was managing, absent any allegations of fraud or concealment, including the following provisions: (1) Article I, titled "Participation in the Plan," *see id.* at 4 (capitalization modified to initial capitals only), which advises employees that they will be eligible to participate after "completion of six (6) months of service," *id.*; and (2) Article II, titled "Determination of Benefits," *see id.* at 5 (capitalization modified to initial capitals only), which advises employees that "[a]ccrued [b]enefit[s] will be determined based upon a retirement benefit formula . . . equal to 200% of Your Average Compensation," *id.*

13

knowledge] requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA'" (alteration in original)), *and Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Murata Erie N.A., Inc.*, 980 F.2d 889, 900 (3d Cir. 1992) ("actual knowledge" "requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA"), *with Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003) ("relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute"), *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) ("it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality," but "plaintiff must know of the essential facts of the transaction or conduct constituting the violation"), *and Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987) ("[t]o charge [plaintiff] . . . with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues"). *See also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001) (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992) ("[P]laintiff has 'actual knowledge of the breach or violation' within the meaning of ERISA . . . , when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty

14

or otherwise violated the Act. While a plaintiff need not have knowledge of the relevant law, he must have knowledge of all facts necessary to constitute a claim. Such material facts 'could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.'" (citations omitted)).

Following the more prevalent view[8] that only knowledge of the essential facts constituting the alleged violation or breach is required to trigger § 1113(2)'s three-year limitations period[9] (as opposed to the Third and Fifth Circuit's narrower interpretation of § 1113(2)), the Court finds that Plaintiff's proposed cause of action would be time-barred. Plaintiff had actual knowledge of the increased funding and about Defendant's alleged "incorrect inclusions"—which form the basis of this breach of fiduciary claim—as early as August 22, 2013, and no later than September 12, 2013. *See* Pl.'s Mot. (Doc. No. 18) ¶ 14.e ("8-22-13 Date Plaintiff was notified of a substantial increase in funding, and the inclusion of ineligible persons on the census."); *id.* ¶ 24 ("On 8-27-13, Plaintiff was notified of a substantial increase in the funding requirements."); *id.* ¶ 14.f ("9-12-13 Date the DBP was frozen at the direction of [Defendant] . . . and resolution of Plaintiff due to dispute

---

[8] *See Wright*, 349 F.3d at 330 (broader view of actual knowledge "furthers the policies underlying statutes of limitations. Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims.").

[9] Though the Tenth Circuit has not expressly adopted this view, *see Mid-S. Iron Workers Welfare Plan*, 645 F. App'x at 665, it appears to be the view taken by the Tenth Circuit in *Russell v. Chase Inv. Servs. Corp.*, 384 F. App'x 753 (10th Cir. 2010). In that case, the Tenth Circuit held that the plaintiff's breach of fiduciary duty claim was barred by 29 U.S.C. § 1113(2) because the lawsuit was filed "more than three years after [the plaintiff] had actual knowledge of the facts on which [the plaintiff] based her complaint." *Id.* at 754.

over the census."). Plaintiff therefore knew more than three years before this lawsuit was filed on March 21, 2018, of the facts constituting the alleged violation. It was "not necessary that . . . [P]laintiff also have actual knowledge that th[ose] facts establish[ed] a cognizable legal claim under ERISA . . . to trigger the running of the statute." *Wright*, 349 F.3d at 330. Accordingly, any claim for breach of fiduciary duty based on these allegations would be untimely.

## CONCLUSION

In its Motion for a New Trial, Plaintiff has prayed that this Court vacate its Order and Judgment entered on July 30, 2018, reconsider the timeliness of Plaintiff's proposed claims under § 1113, and allow Plaintiff to file another amended complaint "to clearly state an ERISA statute of limitations among other things." Pl.'s Mot. (Doc. No. 18) ¶ 32.

As stated, the Court's and the parties' reliance on a state-law statute of limitations may be deemed a manifest error of law or a misapprehension of the controlling law that required revisitation. Having now reexamined Plaintiff's proposed claims under § 1113 and having determined that amendment would be futile because those claims would be time-barred, the Court again FINDS that dismissal of this lawsuit is warranted. Accordingly, the Court DENIES Plaintiff's Motion for a New Trial (Doc. No. 18).

IT IS SO ORDERED this 28th day of March, 2019.

_Charles B. Goodwin_
CHARLES B. GOODWIN
United States District Judge